UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | } | |
| | } | |
| VS. | } | CRIMINAL ACTION NO. H-09-397 |
| | } | |
| SAMUEL SANTOS-GUEVARA; aka | } | |
| SAMUEL REYES-GUEVARA; aka SAMUEL | | |
| SANTOS GUEVARA | | |

### OPINION ON DENIAL OF MOTION TO DISMISS INDICTMENT

On October 9, 2009 the Court considered and denied Defendant Samuel Santos-Guevara's motion to dismiss the indictment pending against him. (Doc. 16)  This opinion expresses the reasons why Defendant's motion was denied.

On July 15, 2009 the Defendant was indicted for, "on or about June 18, 2009. . . [being] an alien who previously had been . . . deported . . . from the United States after having been convicted of an aggravated felony, knowingly and unlawfully [being] present in the United States when found in Houston, Texas, without having obtained consent . . . .  In violation of Title 8, United States Code, Sections 1326(a) and (b)(2)."  Doc. 1

Defendant moved to dismiss the indictment because he contends that he was indicted outside the five year statute of limitations.  He argued that he was actually "found in" the United States when he filed with the United States immigration authorities an application for Temporary Protected Status (TPS) on October 21, 2002.

For purposes of Title 8, United States Code, Sections 1326(a) and (b)(2), a previously deported alien is considered "found in" the United States, when

> his physical presence is discovered and noted by the immigration
> authorities, and the knowledge of the illegality of his presence,
> through the exercise of diligence typical of law enforcement

authorities, can reasonably be attributed to the immigration
authorities.

*United States v. Santana-Castellano*, 74 F3d 593, 598, (5th Cir. 1996), *citing United States v. Gomez,* 38 F.3d 1031, 1037 (8th Cir. 1994)

The immigration records attached to the Government's response to Defendant's Motion

to Dismiss (Doc. 21) indicate that Defendant, using the name Samuel Santos-Guevara, date of

birth October 27, 1962, was arrested at the border of the United States and Mexico near

McAllen, Texas on July 23, 1988 and deported from the United States on August 19, 1988.  Doc.

21, Exhibit 1, (Alien File: A28586699)

The immigration records also contain a Warrant of Deportation dated March 10, 1993

that reflects that one Samuel Santos-Guevara, Texas Department of Criminal Justice Number

627127,  was subject to deportation pursuant to Sections 241 (a)(1)(B), (a)(2)(B)(i), and

(a)(2)(A)(iii) of the Immigration and Nationality Act of 1990[1] and was deported March 17, 1993.

Doc. 21, Exhibit 5 (Alien File: A29 324 967)

On July 29, 2002, Samuel Reyes-Guevara filed by mail his first Form I-821, Application

for Temporary Protected Status.   On this July 2002 application he used the birth date of

November 24, 1963, and he stated that he had entered the United States in 1984 and had resided

in the United States since that time.  He falsely stated that he had been involved in deportation

proceedings in Houston, Texas in 1990, but he denied that he had been excluded or deported

---

[1]  Former section 241 of the Immigration and Nationality Act was redesignated as section 237 by section 305(a)(2) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).
Subsection (a)(1)(B) provides "Any alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens. . . ."
Subsection (a)(2)(B)(i) provides "Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802). . .is deportable."
Subsection (a)(2)(A)(iii) provides "Any alien who is convicted of an aggravated felony at any time after admission is deportable."

from the United States within the last twenty years.[2]  Doc. 21,  Exhibit 3 (Alien File: A76 909 764)

On October 21, 2002 Samuel Reyes-Guevara again made application by mail for TPS.  In this application he again used a birth date of November 24, 1963, he again indicated that he had entered the United States in 1984 and lived in the United States since that time, and he again stated that he had been involved in deportation proceedings in Houston, Texas in 1990.   On the October 2002 application, however, he noted that he had "been excluded and deported from the United States within the past year, or [had] . . .been deported or removed from the United States at government expense within the last five years (20 years if you have been convicted of an aggravated felony);" Doc. 21, Exhibit 2, Part 4 at 2h.

For the October 2002 TPS application, Defendant provided his right index fingerprint together with his photograph to the immigration authorities.  These were used by the authorities to issue a temporary employment authorization document [EAD], which, by regulation, the immigration authorities issue as an interim benefit before the determination of the eligibility of the applicant for TPS. *Cf.* 8 CFR 274a.13.  The Employment Authorization Card, with fingerprint and picture was issued February 6, 2003.  Doc. 16 at 2    The submission of the photograph and right index fingerprint did not generate an FBI background check. Doc. 21 at 2-3

Using the name Samuel Reyes-Guevara, date of birth, November 24, 1963, Defendant filed a third application for TPS on September 10, 2003.  On this application, unlike on the first two, he listed a social security number.  Further, he falsely answered "No" to the question on the

---

[2]  The TPS Application  informs the applicant that to be eligible for Temporary Protected Status he must be admissible as an immigrant to the United States and asks the applicant to review a list of  fifteen circumstances and state if a circumstance applies to the applicant.  One of the circumstances, found at Part 4. Eligibility Standards, 2h, is "have you been excluded and deported from the United States within the past year, or have you been deported or removed from the United States at government expense within the last five years (20 years if you have been convicted of an aggravated felony);"

application, "Are you now or have you ever been under immigration proceedings?"  He further falsely answered "None" to all the factors that would have made him ineligible for TPS, including Part 4. Eligibility Standards, 2h.  Doc. 21, Exhibit 6.

Although ultimately Defendant provided complete fingerprints in connection with the October 2002 application for TPS, the immigration officials could not at the time have known who he really was or whether he had a criminal record because he used an alias, Samuel Reyes-Guevara, instead of Samuel Santos-Guevara.  The date of birth,  November 24, 1963, he used on the applications for TPS, was different from the date of birth, October 27, 1962,  reflected on the record of his August 1988 deportation.   Matters were further complicated because numbers for the Alien Files issued to the Defendant for his August 1988 deportation (A28 586 699) and his March 1993 deportation (A29 324 967) differed from the Alien File number (A76 909 764) used on all three of his Applications for TPS. [3]

On December 17, 2003 the immigration authorities issued a "Notice of Intent to Deny" Defendant's application for TPS, informing him that the FBI background check had indicated that he had been arrested for narcotics violations.  The notice also informed Defendant that he must provide information and documents to dispute this finding.  Defendant did not reply to this notice. Doc. 21, Exhibit 7.

On March 15, 2004 the immigration authorities issued a "Notice of Decision to Deny," which informed the Defendant that, based upon his failure to provide the additional information regarding his prior criminal record, the authorities would deny his Application for TPS. Doc. 21, Exhibit  8.

---

[3] Alien Files are kept for individual aliens and document  the alien's contacts with immigration authorities.  *Id*. at 3.

On July 28, 2004 the Alien Files containing the applications for TPS and one of the deportations were combined.  Doc. 21, Exhibit 4.  Immigration authorities issued a letter to Samuel Reyes-Guevara requesting him to appear in person on August 5, 2004 to provide additional identification documents in connection with his application for TPS.  Doc. 21, Exhibit 9.  The Defendant did not appear at the hearing and had no further contact with immigration officials until his arrest in the instant case.

The Government maintained that Samuel Santos-Guevara, also known as Samuel Reyes-Guevara was "found" in the United States after attempting to renew his Texas driver's license at the Texas Department of Public Safety on June 18, 2009.  When immigration authorities were notified, they compared fingerprints and Alien Files, and it was only then that they became aware that the Defendant had been previously deported subsequent to his conviction for an aggravated felony.

Defendant's position is that he was "found" on or about October 12, 2002 when his second TPS application was received in the mail and filed by immigration authorities.  "Mr. Guevara essentially turned himself in to immigration authorities." Doc. 16 at 5.  "Although he did not specifically disclose that he had been convicted of a felony, he disclosed that he had been deported in 1990, more than 5 years before submitting the TPS application."  Doc. 16 at 4.  "Immigration authorities knew that he was deported, and knew that the deportation could very well have been as a result of an aggravated felony."  Doc 16 at 4.  Defendant argues that in the "exercise of diligence typical of law enforcement authorities, the immigration authorities "knew or should be attributed with the knowledge of the illegality of Mr. Guevara's presence as of October 12, 2002."  Doc. 16 at 5.

Defendant's arguments ignore one important fact.  When the Defendant, whose real name is Samuel Santos-Guevera, applied for Temporary Protective Status, he used an alias, Samuel Reyes-Guevera in an attempt to hide his identity.  The use of an alias was not an oversight because he made other attempts to hide his identity.  On all three applications he used the same date of birth, which may or may not be his real date of birth, but differs from the date of birth used on the 1988 record of his first deportation.  Although he admitted in both applications filed in 2002 to having been "under immigration proceedings" and checked the box for "Removal/Deportation," he recorded that the deportation was in Houston in 1990.  He also stated on all three of the applications that he had entered the United States in 1984 and "have resided in the United States since that time," also a false statement.  On the October 2002 application, although he acknowledged that Part 4 Eligibility standards 2h applied to him, he did not fully answer the question posed.  The application states, "If any of the above statements apply to you, indicate which one(s) by number reference on the line below. . .and include an explanation on a separate piece of paper. . . ."  Doc. 21, Exhibit 2 at 3   Defendant gave no explanation.

In the *Gomez* case, relied upon by the Fifth Circuit, the Eighth Circuit held "a previously deported alien is 'found in' the United States when his physical presence is discovered and noted by the immigration authorities. . . ."  *Gomez*, 38 F.3d at 1037.

The filing by mail of an untruthful application for TPS does not constitute finding and noting physical presence.  Moreover, the Defendant affirmatively concealed his identity from the immigration authorities by using an alias and a different date of birth on the applications for TPS, failing to explain the deportation proceedings to which he admitted, and by sprinkling his applications with other falsehoods.  In *United States v. Lennon*, 372 F.3d 535 (3rd Cir. 2004),

Lennon, the defendant alien, had used an alias when she crossed the border into the United

States.  The Third Circuit found that

> The logic of *Di Santillo*[4] -- that immigration authorities should be imputed with "knowledge" of an alien's presence in the United States—does not extend to a case such as this, where Lennon affirmatively concealed her identity.  To hold otherwise would actually favor the illegal entrants who affirmatively conceal their identities over those who honestly use their own names.

*Lennon* at 541

The Third Circuit then sites to "other courts,[5] holding that the offense of being 'found in'

the United States illegally is 'committed' when the alien comes to the affirmative attention of

INS officials."  The holding continues, "Indeed, in *Whittaker*, the Second Circuit interpreted

Section 1326 as we do here:  Where an alien unlawfully enters with a fictitious name, even

through a recognized port of entry, he is 'found in' the United States when actually discovered."

*Lennon* at 51, *citing and quoting Whittaker,* 999 F2d at 42.

Because the Defendant Samuel Santos-Guevera used an alias, as well as other falsehoods,

in filing his application for TPS on October 12, 2002 he was not "found in" the United States on

that day.  Rather, he was found in the United States when actually discovered, that is, when his

physical presence and true identity as Samuel Santos-Guevera came to the affirmative attention

of immigration authorities, on June 18, 2009.  The Defendant was indicted on July 15, 2009,

within the five year statute of limitations.  Accordingly, the Motion to Dismiss the Indictment

(Doc. 16) was DENIED.

---

[4] *United States v. Di Santillo*, 615 F.2d 128 (3rd Cir. 1980)
[5] *United States v. Rodriguez*, 26 F.3d 4, 8 (1st Cir. 1994); *United States v. Gonzales*, 988 F.2d 16, 18 (5th Cir. 1993); *United States v. Whittaker*, 999 F.2d 38, 40-42 (2nd Cir. 1993).

SIGNED at Houston, Texas, this 6th day of November, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE